IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOHN VERNON SCHNELL,            )
                                )
            Plaintiff,          )
                                )
    v.                          )      1:12CV679
                                )
LEON E. PANETTA, Secretary of Defense,  )
                                )
            Defendant.          )

MEMORANDUM OPINION, ORDER, AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

This is an action by Plaintiff John Schnell, a former U.S. Navy service member, alleging that the United States Navy violated his 14th Amendment Constitutional rights and that the Board for Correction of Naval Records ("BCNR") erred in handling his petition for correction of his Navy records. Defendant Leon Panetta, former Secretary of Defense, has filed a Motion to Dismiss [Doc. #12], seeking to dismiss Plaintiff Schnell's action pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), or alternatively for judgment on the pleadings pursuant to Rule 12(c). Defendant Panetta has also moved for a protective order [Doc. #15] to stay any discovery until resolution of the Motion to Dismiss. Plaintiff Schnell has moved for the Court's assistance in obtaining documents [Doc. #8, #22]. Plaintiff Schnell has also filed a series of Motions for Summary Judgment [Doc. #24, #25, #26, #27, #28]. Plaintiff Schnell is proceeding *pro se* in this action. For the reasons that follow, Defendant Panetta's Motion to Dismiss should be granted, and Plaintiff Schnell's Motions for Summary Judgment should be

denied. Defendant Panetta's Motion for Protective Order will be granted, and Plaintiff Schnell's Motions for Production of Documents will be denied without prejudice.

I.  FACTS, CLAIMS, AND PROCEDURAL HISTORY

   A.  Plaintiff's Complaint

In his Complaint, Plaintiff alleges that while he was in the Navy, the Navy "had an uneven application of policies in violation of the equal protection clause of the 14th amendment." (Compl. [Doc. #2] at 3.) In support of this contention, Plaintiff describes an incident occurring on October 19, 1993, while he was onboard the USS New York City. Plaintiff states that he was "reduced in rate" for not properly "tagging out" a lube oil purifier. He says that the command was using a procedure for tagging out that differed from two other commands under which he had served. Plaintiff uses this as an example of an "unequal application of requirements." Plaintiff also refers to two alleged incidents of hazing that he says he witnessed while onboard Navy ships. Plaintiff alleges that the first occurred on March 9, 1997, on the USS Alaska. Plaintiff says that he "declined to take part in the 'crossing the line ceremony' for crossing the equator that this command allowed to happen." (Id.) Plaintiff contends that the second incident occurred when "people would make rate or get their 'dolphins,'" and those of higher rate, or who had their "dolphins," would "punch the person in the arm or chest depending on the 'tacking ceremony' needed." (Id.) Plaintiff does not allege that he took part in these ceremonies. These allegations comprise Plaintiff's equal protection clause claim.

Plaintiff also alleges that he applied to the Board for Correction of Naval Records to "upgrade" his discharge, raising allegations that the Navy did not properly investigate his allegations of sexual harassment that occurred while he was on active duty. (Id. at 4.) He then goes on to list the various incidents of alleged harassment and retaliation which he contends occurred in 1996 and 1997. (Id. at 4-10.) Plaintiff contends that his subsequent "write ups" in 1996 and 1997 were in retaliation for complaining about the alleged harassment, culminating in his discharge in 1997. However, Plaintiff did not file any type of claim or complaint until 2010, when he requested correction of his records by the BCNR.

Plaintiff seeks relief in the form of monetary damages, including "$300 trillion" in punitive damages, and various forms of equitable relief, including having punishments he received removed from his naval records, restoring his rank, awarding back pay, granting him a military retirement, and issuing him an updated DD-214. (Id. at 12-13.)

B.  Administrative Record

To the extent Plaintiff challenges the action of the Board for Correction of Naval Records, the Navy has produced a copy of the administrative record relating to this case, which is on file in the Navy Personnel Command and Board for Correction of Naval Records. According to that record (the "AR"), Plaintiff Schnell first entered the Navy on November 14, 1984. (AR 100.) He was honorably discharged on May 14, 1987, but re-enlisted in the Naval Reserve Officer Program the following day. (AR 95, 140.) On June 5, 1989, he was honorably discharged from the Naval Reserves and re-enlisted on June 20, 1989. (AR 96, 142.) He received non-judicial punishment of reduction in rate to E-5 and loss of pay on October 19-20,

1993, when he was found guilty of dereliction of duty. (AR 300.) A Letter of Substandard Service was placed in his file on June 6, 1994, and Plaintiff was told that he could not re-enlist unless his performance improved. (AR 301.) He showed improvement, and this restriction on re-enlisting was removed on October 27, 1995. (AR 304). On February 12, 1997, Plaintiff was found guilty of three instances of failing to obey orders by: (1) failing to log his name as ordered; (2) failing to stop and acknowledge a superior as ordered; and (3) failing to document a deficiency which he believed existed with a valve in the ship's evaporator. (AR 305-06.) On March 25, 1997, he was found guilty of tripping shut a trip valve without permission. (AR 305.) In March 1997, he was advised that he was being considered for an administrative separation from the Navy because of misconduct. (AR 307-09.) The Navy discharged Plaintiff on April 14, 1997, with a general discharge under honorable conditions. Plaintiff did not appeal his dismissal or file any sexual harassment claim. (AR 96.)

The record also reflects that Plaintiff received a negative evaluation report for the period from March 1996 until March 1997. According to the report, Plaintiff "display[ed] a continued resistance to teamwork within the machinery division." (AR 63.) In addition, Plaintiff's evaluation report for the period from March 1997 until April 1997 reflects that he was being separated for his pattern of misconduct as evidenced by all of his punishments under the Uniform Code of Military Justice. (AR 60-61.)

Over 13 years later, in December 2010, Plaintiff submitted his Application for Correction of Military Record to the BCNR. (AR 40.) He identified the errors to be corrected as a change in discharge, repayment of monies, reinstatement of rank, and the granting of retirement. (Id.)

As the reason for his request, Plaintiff stated that he had been subjected to a hostile environment. (Id.) In support of his request, Plaintiff submitted his allegations of harassment, 4 sheets of medical examinations, an achievement medal, several evaluation reports, his enlisted performance record, and his history of assignments. (AR 40-70.) The 4 sheets of medical records reflect that on September 20, 1996, Plaintiff told medical personnel that "a disparaging rumor" about him (which he reported as being false) was spread around the ship and his shipmates were harassing him about it, including a Chief. (AR 57.) In September 2011, the Board wrote to Plaintiff to advise him that "the Board found the evidence submitted was insufficient to establish the existence of probable material error or injustice." (AR 37.)

In a follow-up email dated October 6, 2011, the Board advised Plaintiff that with respect to his allegation of sexual harassment, it did not "have the authority or the responsibility to initiate an investigation [sic] which occurred over fourteen years ago." (AR 35.) The email further advised Plaintiff that in his record "there was no documented mention/evidence of an incident." (Id.) The email concluded by advising Plaintiff that he was entitled to have the Board reconsider its decision upon submission of new and material evidence or other matter not previously considered by the Board. (Id.) On October 7, 2011, Plaintiff wrote to the Board that none of his records mention "the incident," except the reference in the medical examination notes referred to above. (AR 34.) Although the record contains a few more emails to the Board from Plaintiff, there is no record of him requesting that the Board reconsider his application.

5

II. DISCUSSION

A. Standard

The standard for granting judgment on the pleadings is the same as for granting a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Burbach Broad. Co. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002). In addition, the standard for granting a dismissal for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as for dismissal under Rule 12(b)(6). De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003). A plaintiff fails to state a claim upon which relief may be granted under Rule 12(b)(6) when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

B. Equal Protection Claim

Plaintiff first claims that his equal protection rights were violated by the Navy because of his reduction in rate and his witnessing two hazing incidents. Defendant argues that this claim should be dismissed because it fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Court agrees that Plaintiff has not stated a valid claim for relief on equal protection grounds.[1]

---

[1] Plaintiff raises his equal protection claim under the Fourteenth Amendment, which governs only state action and not the type of federal action of which Plaintiff complains. See United States v. Morrison, 529 U.S. 598, 621 (2000) ("the Fourteenth Amendment, by its very terms, prohibits only state action"). The Court will consider Plaintiff's claim as being raised pursuant to the Fifth Amendment. The same analysis applies under both

"To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Once this showing is made, the Court considers whether the disparity in treatment can be justified under the proper level of scrutiny. Id. In the present case, Plaintiff's theory is that his equal protection rights were violated because he was disciplined for "tagging out" the oil purifier in a manner that complied with a previous command's procedures. Plaintiff does not argue that this procedure complied with his current command's procedures. He also does not allege that another crew member of his current command was allowed to tag out the oil purifier in the manner he did and was treated differently. Plaintiff's allegation that he witnessed two incidents of hazing also does not show that he was treated differently from someone similarly situated. Plaintiff's equal protection claim should be dismissed on this basis.

Moreover, Plaintiff may not state a cause of action for a constitutional tort against Navy officials or former Secretary Panetta. The Supreme Court and the Fourth Circuit have made clear that a claim for damages for a constitutional tort, a Bivens[2] type of action, is not "available for injuries that 'arise out of or are in the course of activity incident to service.'" Randall v. United States, 95 F.3d 339, 344 (4th Cir. 1996) (quoting United States v. Stanley, 483 U.S. 669, 684 (1987)). The Randall court concluded that the plaintiff's claim that he was denied promotion in the United States Army as a result of racial discrimination "arose out of or was in

---

amendments.

[2] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

the course of activity incident to service." Id. The Fourth Circuit recently reviewed the relevant cases in this area and "restate[d] the principles guiding [the court's] analysis . . .: no Bivens action will lie where special factors counsel hesitation in creating an implied right of action and special factors clearly counsel hesitation in implying a cause of action for injuries arising out of military service." Cioca v. Rumsfeld, 720 F.3d 505, 512 (4th Cir. 2013). Injuries are considered "incident to service" where "a complaint asserts injuries that stem from the relationship between the plaintiff and the plaintiff's service in the military." Cioca, 720 F.3d at 515. In the present case, Plaintiff Schnell's claims arose while he was serving on active duty in the United States Navy and involve issues of discipline and his ultimate discharge from the Navy. Therefore, they "arose out of or were in the course of activity incident to his service" and fail to state a valid claim for relief. Randall, 95 F.3d at 344 (affirming district court's dismissal of the plaintiff's due process cause of action for failing to state a claim). For all of these reasons, Plaintiff's equal protection claim should be dismissed.

C. Review of the Decision of the Board for Correction of Naval Records

In addition to his equal protection claim, Plaintiff also seeks review of the decision of the BCNR denying his request for correction of his military records. However, Plaintiff does not state under what authority he seeks review of the BCNR's decision. There are two possible avenues of relief for plaintiffs challenging a decision of a board for the correction of military records: the Tucker Act, 28 U.S.C. § 1346(a)(2), § 1491; and, if no other adequate remedy is available, the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-06. See Randall, 95 F.3d at 345. However, under the Tucker Act, if the plaintiff's claim is for more than $10,000, he must

8

bring his action in the Court of Federal Claims rather than this Court. Id.; see also Mitchell v. United States, 930 F.2d 893 (4th Cir. 1991); Remmie v. United States, 98 Fed. Cl. 383 (Fed. Cl. 2011). Therefore, to the extent Plaintiff may be seeking judicial review of the BCNR decision under the Tucker Act, this case should be dismissed without prejudice to Plaintiff refiling it in the Court of Federal Claims.[3]

In addition, to the extent that Plaintiff Schnell is attempting to raise claims for review under the APA rather than the Tucker Act, the APA is limited to claims "for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Here, it appears that Plaintiff's claims could be asserted in the Court of Federal Claims pursuant to the Tucker Act. Therefore, because another avenue for review exists, the APA would not be available. Moreover, even if the APA were available, Plaintiff has failed to state a valid claim under the APA. In this regard, the Fourth Circuit has noted that APA review of the decision of a board of correction such as the BCNR is "quite limited." Randall, 95 F.3d at 348. Such decisions may be set aside only if they are arbitrary, capricious, or not based on substantial evidence. Id. In this case, Plaintiff Schnell has not stated a claim plausible on its face with regard to whether the BCNR's decision is arbitrary, capricious, or not based on substantial evidence. Plaintiff does not claim that the facts as recorded in his Navy record are false. In other words, he does not contend that he was not disciplined as set out in the record. Rather, his claim is that the Navy did not properly investigate his claims of sexual harassment in 1996 and 1997. According to Plaintiff, if a proper

---

[3] Because it is not clear if Plaintiff actually intends to seek review under the Tucker Act, the Court concludes that it is not in the interest of justice to transfer this case to the Court of Federal Claims, and the Court will instead leave it to Plaintiff to decide whether he wants to pursue his claims with that Court. See 28 U.S.C. § 1631.

9

investigation had been conducted by the Navy in 1996 and 1997, many of the actions of which he now complains would not have occurred because he "wouldn't have been on board if the command would have fully investigated the incident." (Compl. [Doc. #2] at 8, 10.) However, that is not a proper basis for a claim against the BCNR. Plaintiff further contends that if the BCNR had made an appropriate investigation, it would have uncovered this harassment and corrected his record. However, the regulations governing the BCNR state explicitly that "[t]he Board is not an investigative body." 32 C.F.R. § 723.2(b). The BCNR must make its decision based upon the evidence submitted by the applicant and his service record. Therefore, even if Plaintiff could seek review under the APA, he has failed to state a valid claim for relief.[4]

    D.    Remaining Motions

Because this Court recommends granting Defendant Panetta's Motion to Dismiss all of Plaintiff's claims, Plaintiff's Motions for the Production of Documents [Doc. #8, #22] will be denied without prejudice. Defendant Panetta's Motion for a Protective Order [Doc. #15] seeking protection from discovery requests until after a decision is rendered on its Motion to Dismiss will be granted. Finally, Plaintiff Schnell has filed several Motions for Summary Judgment [Doc. #24, #25, #26, #27, #28], which should be denied for the reasons set out above.

III.    CONCLUSION

---

[4] The Court also notes that Plaintiff Schnell does not have a claim for relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, because the Fourth Circuit has found that "Congress intended to include only civilian employees of the military departments, and not uniformed service members, within the reach of Title VII." Randall, 95 F.3d at 343.

IT IS THEREFORE RECOMMENDED that Defendant Panetta's Motion to Dismiss [Doc. #12] be granted, and that this action be dismissed.

IT IS FURTHER RECOMMENDED that Plaintiff Schnell's Motions for Summary Judgment [Doc. #24, #25, #26, #27, #28] be denied.

IT IS ORDERED that Plaintiff Schnell's Motions for Production of Documents [Doc. #8, #22] are DENIED WITHOUT PREJUDICE; and that Defendant Panetta's Motion for Protective Order [Doc. #15] is GRANTED.

This, the 26th day of August, 2013.

/s/ Joi Elizabeth Peake<br>United States Magistrate Judge